BOLIN, Judge.
Mr. Beuford Jaclca, an architect, instituted suit against the Ouachita Parish School Board seeking recovery of $27,005.-55 alleged to be the balance due under a contract with the school board, pursuant to which plaintiff performed architectural services in the building of Riser Elementary and Junior High School in West Monroe, Louisiana. The school board answered admitting the execution of the contract with plaintiff as well as an original contract with Jesse F. Heard & Sons, Inc., for construction of the school at a cost of $1,007,-948. The cost of construction was later increased by a change order to $1,054,861.37, and defendant reconvened for the added expense, alleging the change order and expenses incurred in connection therewith were caused by the fault of the architect. The lower court dismissed defendant’s re-conventional demand and rendered judgment in favor of plaintiff in the amount re *924 quested. From this judgment the school board appeals.
The basis of the main demand is an alleged unpaid balance for services rendered under the written architectural contract between the parties. This contract was made part of plaintiff’s petition and also was filed in evidence by defendant. To us it is concise, clear, and unambiguous. By its terms the only obligation imposed upon the school board was to pay the architect a fee of 6% computed upon the entire and final cost of the work. Except for miscellaneous provisions not pertinent to this case, the remainder of the contract is a delineation of the duties and obligations of the architect:
“ * * * The Architect’s professional services shall consist of and include, among other services which are not specifically mentioned here, the necessary conferences; the preparation of preliminary studies and plans, working drawings, specifications, large-scale detail drawings for architectural, structural, plumbing, electrical and other mechanical work, engineering services; * * (Emphasis added.)
On the second page of the contract, in a separately numbered paragraph, there is this provision:
“4. The Architect agrees to supply all engineering and other special services necessary to complete the work. No extra fees shall be charged for such services unless agreed to in writing by the Owner before such services are contracted for and/or rendered.” (Emphasis added.)
Shortly after signing the above contract Mr. Jacka obtained a topographical map from a school board member residing in the ward where the building was to be constructed. This map had been prepared approximately five years before by a registered land surveyor. It did depict thereon the twenty acres owned by the school board upon which the school building in question was to be constructed. Without making any effort to contact the surveyor who made the map or to have the accuracy of the contour lines checked by an engineer, the architect relied on it in the preparation of his plans and specifications. When the building contractor began his work it was discovered the elevations shown on the topographical map were incorrect. The architect then secured an engineer and had a new and accurate topographical map made from which he prepared new specifications.
The expense of additional grading, filling and material necessary to correct the elevations of the site, as required by the plans for the school, was estimated by the building contractor and an independent engineer to be $28,000. The school board also decided to raise the entire building level one foot which, together with the $28,000, would increase the additional expenditure to $46,-913.37. The school board, reserving its right to assert its claim in damages against the party responsible for the extra expenditure, approved the change order and the contractor completed the building and was. paid the full price of $1,054,861.37.
The architect contends his fee should be 6% of the entire cost or $63,291.70. Acknowledging he had been paid $36,286.13, he sued for the difference of $27,055.57. Defendant, by reconventional demand, contends plaintiff’s “fault” necessitated the extra expenditure of $46,913.37 and that plaintiff therefore owes it the sum of $22,722.72.
In his written reasons for judgment the trial judge found the school board had admitted it was indebted unto plaintiff for 6% of the total contract price. He reviewed the testimony of several architects testifying for plaintiff that it was customary for an owner to furnish the architect with a topographical map, and in their opinion Jacka acted as any other competent architect under similar circumstances. He then ruled that defendant had failed to prove negligence against the architect. He likewise commented upon the failure of the school board to dispute the authority of the board member to give Jacka the map.
*925 We find ourselves unable to agree with the trial judge. Our study of the pleadings leads us to conclude defendant in its answer categorically denied it was indebted unto plaintiff for any amount. In answer to article four of plaintiff’s petition, relative to the amount of the original building contract and change order, defendant answered :
“The allegations of Paragraph 4 are denied, except that it is admitted that all plans and all specifications were prepared by the architect, and that a contract was entered into between the defendant and Jesse F. Heard & Sons, Inc., and that a change-order to the contract was made; however, by the minutes of the defendant’s board meeting of Tuesday, November 27, 1962, the defendant reserved all rights against any person or persons responsible for the necessity of entering into the change-order, a copy of said minutes being attached hereto and made a part hereof as though set forth in full; and that the necessity for the said change-order was due to improper specifications which were the sole responsibility of the architect, plaintiff herein.”
In its answer defendant did admit the written contract with the architect and in fact averred it was the best evidence of its contents.
In its reconventional demand the school board affirmatively alleged the change order and extra expenditures were necessitated by the “fault” of the architect. Plaintiff, in answer to this reconventional demand, pleaded in the alternative that if he were found to be at fault he should be exonerated because he was furnished the map by a member of the school board; that the board therefore warranted its correctness and should be estopped to deny its correctness.
We make the following findings:
FIRST
There were only two written contracts involved in the case, i. e., the building contract between the school board and Jesse F. Heard & Sons, Inc., and the contract between plaintiff and defendant for architectural services. In neither of these contracts is it provided by inference or otherwise that the school board was obligated to furnish a topographical map. To the contrary, the contract sued upon provided in certain and unambiguous terms, that the architect was to perform all engineering services.
SECOND
The architect was at “fault” itnder the terms of his contract in failing to supply engineering services by accepting a map prepared several years previously by a registered land surveyor. In light of the positive duty imposed upon him by the written contract, he cannot be excused for accepting an incorrect map from another because of custom. Parenthetically, we think the basis of the trial judge’s error was in failing to take into consideration the provisions of the contract.
THIRD
This breach of duty or “fault” damaged the defendant in the sum of $28,000. The other additional expenditure of $18,913.37 was the cost of raising the foundation of the entire building and was due to no fault of the architect.
FOURTH
The burden of proof was not upon the school board to disprove the lack of authority of the board member who gave the incorrect map to plaintiff; such evidence was relevant only to the plea of es-toppel set up in plaintiff’s answer to defendant’s reconventional demand. We find Jacka has failed to prove this alternative plea; on the contrary, the evidence estab *926 lishes his lack of due care in fulfilling his ■contractual obligation to supply all engineering services by relying on a five-year-old map handed him by an individual member of the school board.
FIFTH
The architect is entitled to a fee of 6% on the original contract price of $1,007,948, plus 6% on the additional expenditure of $18,913.37 required for raising the foundation level one foot which fee amounts to $61,611.68. Defendant has previously paid $36,286.13, and is entitled to the sum of $28,000 caused by Jacka’s faulty workmanship, or a total credit of $64,286.13, leaving .a difference of $2,674.45 due defendant.
For the reasons assigned the judgment .appealed from is reversed and there is now judgment rendered in favor of Ouachita Parish School Board and against Beuford ■G. Jacka in the sum of $2,674.45 with legal interest thereon from judicial demand until paid and all cost of this suit, including the ■cost of this appeal.
Reversed and rendered.